420 P.2d 134

**B. B. P. ASSOCIATION, INC.,**
Plaintiff-Appellant,

v.

**CESSNA AIRCRAFT COMPANY, Idaho Aviation Center, Inc., and H. P. Hill,**
Defendants-Respondents.

No. 9851.

Supreme Court of Idaho.

Nov. 14, 1966.

Petersen, Moss & Olsen, Idaho Falls, for appellant.

Holden, Holden & Kidwell, Idaho Falls, for respondent, Cessna Aircraft Co.

Ferebauer & Barnard, Idaho Falls, for respondents, Idaho Aviation Center, Inc., and H. P. Hill.

TAYLOR, Justice.

Plaintiff (appellant), a domestic corporation, brought this action against the Cessna Aircraft Company (respondent), a Kansas corporation, engaged in the manufacture and sale of aircraft. The Idaho Aviation Center, Inc., an Idaho corporation, is also named as a defendant. This company has its principal place of business at Idaho Falls and is engaged in retailing, servicing, and repairing aircraft manufactured by defendant Cessna Aircraft Company.

Plaintiff alleged that on or about June 22, 1963, it purchased from the defendant retailer a certain aircraft manufactured by the Cessna Aircraft Company; that the aircraft was warranted by the defendant manufacturer and the defendant retailer to be reasonably fit for the purpose for which it was manufactured and sold, to wit: for the transportation of plaintiff's officers and agents; that it was a first class aircraft of its kind and class; that it was properly and sufficiently constructed and free from defects in material and workmanship. Plaintiff further alleged that on or about August 25, 1963, plaintiff discovered that the aircraft was not fit for the general purpose for which it was manufactured and sold; that it did not fulfill the warranty and in particular that it had been manufactured with a defective engine; that after examination of the engine the manufacturer and retailer agreed to furnish and install a new engine; that thereafter and on or about September 22, 1963, the retailer and manufacturer informed plaintiff that a new engine had been installed and that the aircraft and engine were airworthy and operational; that plaintiff subsequently discovered that the engine installed was not a new one and that it continued to malfunction and as a result the aircraft was not safe to fly.

In a second count plaintiff alleges that the promise of the manufacturer and retailer to install a new engine and their representations that a new engine had been installed in the aircraft were fraudulently made for the purpose of inducing the plaintiff to accept the aircraft, and that plaintiff being induced thereby accepted the aircraft, to its damage.

The defendant Cessna Aircraft Company appeared specially and moved to quash the service of summons upon it. The motion was based upon the ground that the defendant manufacturer was not doing business in the state of Idaho, had no property in the state, and had no agent, officer or other person upon whom service of summons could be made; that the alleged service was made by serving a copy of summons and complaint upon an officer of defendant in the state of Kansas; and on the ground that plaintiff had not complied with the provisions of I.C. § 5–508 in that no verified complaint, nor any affidavit for service of summons outside the state, was filed as required by the statute.

Supporting and opposing affidavits were made and filed by officers of the various corporations involved, and certain exhibits were identified by the affiants and admitted in evidence. The court concluded that the Cessna Aircraft Company was not doing business in Idaho; that the complaint was not verified; and that other essentials to service outside the state were wanting.

Plaintiff brought this appeal from the order quashing service on the foreign corporation. Idaho Code § 5–508 requires an affidavit setting forth the facts upon which the authorization for foreign service is requested, and the showing of a cause of ac-

tion against the foreign defendant by verified complaint. Originally I.C. § 5–508 was a part of our Code of Civil Procedure of 1881.

In 1961 our so-called "long arm statute" was enacted. Its provisions are as follows:

"Any person, firm, company, association or corporation, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, firm, company, association or corporation, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

"(a) The transaction of any business within this state which is hereby defined as the doing of any act for the purpose of realizing pecuniary benefit or accomplishing or attempting to accomplish, transact or enhance the business purpose or objective or any part thereof of such person, firm, company, association or corporation;

"(b) The commission of a tortious act within this state; * * *." I.C. § 5–514.

"Service of process upon any such person, firm, company, association or corporation who is subject to the jurisdiction of the courts of this state, as provided herein, may be made by personally serving the summons upon the defendant outside the state with the same force and effect as though summons had been personally served within this state." I.C. § 5–515.

"Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over such defendant is based upon this section." I.C. § 5–516.

"Nothing herein contained limits or affects the right to service of process in any other manner now or hereafter provided by law." I.C. § 5–517.

So far as applicable here, Idaho Rules of Civil Procedure provide as follows:

"Whenever a statute of this state provides for service of a summons, or of a notice, or of an order in lieu of summons, upon a party not an inhabitant of, or found within the state, or upon unknown persons, service shall be made under the circumstances and in the manner prescribed by the statute. Personal service outside of the state, when authorized by statute, shall be as provided by rule 4(d). * * *." IRCP Rule 4(e).

Service herein was made in compliance with Rule 4(d).

"Every pleading of a party represented by an attorney shall be signed by at least one resident attorney of record of the state of Idaho, in his individual name, whose address shall be stated before the same may be filed. * * * Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; * * *." IRCP Rule 11(a).

"These rules shall take effect on November 1st, 1958, and thereafter all laws and rules of Civil Procedure in conflict therewith shall be of no further force or effect. * * *." IRCP Rule 86.

See also, I.C. § 1–215.

■ Neither the 1961 statute nor the 1958 Rules of Civil Procedure require verification of the complaint or affidavit stating the facts upon which foreign service is sought. In the circumstances here involved, the signature of a resident attorney satisfied these requirements, under authority of Rule 11(a).

Idaho Code § 5–508 was adopted as a rule of procedure, by order of this court dated March 19, 1951. (I.C. Vol. 2 Appendix). We do not hold that § 5–508 has been entirely abrogated by the Idaho Rules

of Civil Procedure. The provisions of that statutory rule may have force and effect in other factual situations. It is sufficient here to say that the 1958 rules and the 1961 statute have eliminated the necessity for the verification and affidavit, where the foreign defendant has been personally served and thus has had actual notice of the action.

In Ford Motor Company v. Arguello, 382 P.2d 886, 897 (Wyo. 1963), the Wyoming court was concerned with a similar issue. There the court said:

"We think the method of service set forth in the statute is not exclusive and that the method provided by our rules must be considered in conjunction with and cumulative of the method of service upon nonqualified foreign corporations. Toedman v. Nooter Corporation, 180 Kan. 703, 308 P.2d 138, 143."

*Doing Business*

The facts are not materially in dispute on the issue as to whether Cessna was "doing business" in Idaho.[1] Cessna's method of doing business was to establish regional distributors throughout the country, assigning certain areas to each. Southern Idaho, including Bonneville county, was assigned by Cessna to its "distributor" Skyways Aircredit Corporation, located at Ogden, Utah. The contract between Cessna and Skyways Aircredit Corporation is not in the record, but is referred to in the affidavits of the officers of the respective corporations. Retail dealers were appointed by the distributor. The Skyways Aircredit Corporation entered into a written contract with the Idaho Aviation Center, an Idaho corporation having its business situs at Idaho Falls, in Bonneville county. By this agreement the Idaho Aviation Center was appointed as a retail "dealer" for certain models of Cessna-built aircraft, parts and accessories, in fourteen southern Idaho

counties. The form for this "Distributor's Dealer Agreement" was provided by Cessna, but the use of the form was not mandatory. Cessna did not approve or control the distributor's appointment of the dealer and there was no direct contractual relationship between the dealer and Cessna. The agreement between the distributor and dealer expressly provided that the dealer was not to be considered an agent of the distributor. Aircraft and parts were ordered through the distributor and orders were subject to approval by Cessna at its home office.

Cessna did not maintain any stock of goods, inventory, or bank account in Idaho; it had no employees residing in Idaho; it did not retain title to any property shipped into Idaho; it paid no commission or other remuneration to any person or corporation selling its products in Idaho. Under its agreement with Cessna, the distributor was responsible for the servicing of all Cessna aircraft in the area assigned to it, including the service required by the terms of Cessna's warranty. Cessna provided the distributor with advertising and sales promotion materials; "Owner's Service Policy" and "Warranty." The distributor in turn provided the dealer with these materials for use in making sales, and for delivery to the purchasers of Cessna aircraft. The owner's service policy and the warranty were issued under the name of the manufacturer, Cessna, and were delivered to the purchaser by the dealer. The retail purchase order also contains a copy of the warranty, which reads as follows:

"The Cessna Aircraft Company warrants each new aircraft manufactured by it to be free from defects in material and workmanship under normal use and service, provided, however, that this warranty is limited to making good at The Cessna Aircraft Company's factory any part or parts thereof which shall, within six (6) months after delivery of such

---

1. As noted in the statement of the case, supra, Cessna is also alleged to have committed a "tortious act" in this state. However, we have not rested this decision on that allegation, nor have we considered it insufficient upon which to authorize foreign service.

aircraft to the original purchaser, be returned to Cessna with transportation charges prepaid, and which upon Cessna's examination shall disclose to its satisfaction to have been thus defective; this warranty being expressly in lieu of all other warranties expressed or implied and all other obligations or liabilities on the part of Cessna, and Cessna neither assumes nor authorizes any other person to assume for it any other liability in connection with the sale of its aircraft.

"This warranty shall not apply to any aircraft which shall have been repaired or altered outside Cessna's factory in any way so as, in Cessna's judgment, to affect the aircraft's stability or reliability, or which aircraft has been subject to misuse, negligence or accident."

By the terms of the contract between the distributor and dealer (prepared by Cessna): Cessna reserved the right to sell directly to certain customers in Idaho; Cessna's warranty was a term of the agreement; the dealer agreed to participate in certain recommended Cessna promotion sales programs; the dealer promised to execute and deliver to each purchaser the Cessna owner's service policy on forms furnished by the distributor and to abide by its terms; dealer agreed to participate in Cessna's recommended identification program as mutually agreed to by distributor and dealer; dealer agreed to use the Cessna uniform accounting system; Cessna was given the right to enforce the provision of the contract concerning the use of trade names, marks, signs or symbols upon termination of the dealership; Cessna was given the right to examine certain records and reports of the dealer; and the dealer was required to maintain a supply of Cessna service parts and special tools.

The period of time during which this system or arrangement for the sale of Cessna products in Idaho had existed is not shown by the record. However, it is referred to in the affidavits as having existed over a period of several years. The distributor-dealer agreement was dated in 1962.

The president of plaintiff corporation avers in his affidavit that the plaintiff had previously purchased from the defendant dealer, two Cessna aircraft: one a 1957 model and the other a 1960 model. While the distributor-dealer agreement provides for a yearly renewal thereof, it is apparent that the arrangement under which the manufacturer's products were to be sold and serviced in Idaho was intended to be a permanent and continuous business operation, either through the same distributor and dealer, or their successors in like relation to Cessna. No temporary or isolated transaction was comtemplated or involved. However, we must note here that by the terms of the statute, a single act or transaction may render the nonresident amenable to process.

It is apparent that Cessna was doing business in Idaho within the definition of I.C. § 5–514(a), supra. Assuming the distributor and dealer were independent contractors and not agents of Cessna, in the ordinary sense of that term, nevertheless they were the agencies or instrumentalities by means of which Cessna carried on the sales and servicing of its products in this state. Through them it delivered to plaintiff its owner's service policy and its written warranty. Those instruments were issued under the name, and by the authority, of Cessna. Cessna, its distributor and dealer were bound by the terms thereof. The delivery in Idaho of these documents was an act done and authorized by Cessna in Idaho, for the purpose of realizing a pecuniary benefit and to accomplish, transact or enhance its business purpose and objective, to wit: the sale of its products in this state. Cessna assigned the territory in Idaho to its distributor, knowing and intending that, through the distributor and the dealer, its owner's service policy and warranty would be used to promote sales of its products in Idaho, and would be delivered to and relied on by purchasers of its products in Idaho. Privity of contract between Cessna and its Idaho dealer, or between Cessna and the purchaser in Idaho,

was not essential to bring Cessna's operation within the statutory definition of doing business in this state, nor to render it liable on its warranty to a resident of this state who purchased its product in reliance thereon. Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961); Northern Supply, Inc. v. Curtis-Wright Corporation, Alaska, 397 P.2d 1013 (1965); International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945).

■ We are not here concerned with the question as to whether Cessna was "doing business" in this state within the meaning of I.C. Title 30, ch. 5, such as to necessitate compliance with the requirements of that chapter, to qualify it to do business in this state on a parity with domestic corporations. Obviously a foreign corporation may sell its products in Idaho via interstate commerce without complying with that law. The question here is whether Cessna has done any act within this state by reason of which it has subjected itself to the jurisdiction of the courts of this state, under the provisions of the "long arm" statute (I.C. § 5-514). Some of the authorities cited by defendant deal with "doing business" within the meaning of chapter 5, supra. Such authorities are not in point and for that reason will not be discussed here.

"Whether or not a foreign corporation is 'doing business' within a state depends upon the issues involved in the proceedings in which the question is raised. Such a corporation may be doing business within the state so as to be subject to the jurisdiction of the local courts and amenable to service of process therein, and yet not be subject to a statute regulating foreign corporations or prescribing conditions of their doing business within the state. The basis of this distinction lies in the fact that the power of the state to subject a foreign corporation to local regulations is restricted by the commerce clause of the Federal Constitution, but that a state may subject such a corporation which is 'present' in the state to service of process therein, notwithstanding the fact that the local activities of the corporation are confined to transactions in interstate commerce, the state's power to provide for such service of process not being affected by the commerce clause of the Federal Constitution." 60 A.L.R., Annotation, 994, at 995.

See authorities there cited, and also: S. Howes Co. v. W. P. Milling Co., Okl., 277 P.2d 655 (1954); Wills v. National Mineral Co., 176 Okl. 193, 55 P.2d 449, 452 (1936); Tice v. Wilmington Chemical Corporation (Iowa) 141 N.W.2d 616 (1966); Anno., 146 A.L.R. 941, at 942.

■ The purpose of the 1961 Act and particularly § 5-514 thereof, was to furnish, so far as possible, a local forum to residents of this state who have a grievance against a nonqualifying foreign corporation, growing out of its business activities here. The statute is remedial and is to be liberally construed to achieve that purpose. Ford Motor Co. v. Arguello, Wyoming, 382 P.2d 886, 896 (1963). Cf. McCall v. Martin, 74 Idaho 277, 280, 262 P.2d 787 (1953); Keenan v. Price, 68 Idaho 423, 438, 195 P.2d 662, 670 (1948).

The Illinois statute extending the jurisdiction of the local courts to foreign corporations not qualified to do business in Illinois was enacted in 1955 (Ill.Laws 1955, pp. 2238, 2245-2246). Our 1961 Act is similar to that of Illinois and is said to have been based thereon.[2] In Gray v. American Radiator & Standard Sanitary Corporation, 22 Ill.2d 432, 176 N.E.2d 761 (1961), the Illinois statute was held to have extended the jurisdiction of the local courts to a foreign corporation charged with having committed a "tortious act" within the state. The court held that:

"Foreign corporation, which manufactured in Ohio safety valve incorporated in Pennsylvania in hot water heater which

2. Currie, Growth of the Long Arm, Ill.Law F., 1963, p. 537.

was sold to consumer in Illinois, where it exploded injuring Illinois resident, was subject to jurisdiction of Illinois court after service of summons was made upon its registered agent in Ohio." (Syllabus No. 6).

and that the statute, so extending the jurisdiction of the Illinois court, did not violate due process of law. In the course of its opinion the court said:

"Where the alleged liability arises, as in this case, from the manufacture of products presumably sold in contemplation of use here, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this State.

"With the increasing specialization of commercial activity and the growing interdependence of business enterprises it is seldom that a manufacturer deals directly with consumers in other States. The fact that the benefit he derives from its laws is an indirect one, however, does not make it any the less essential to the conduct of his business; and it is not unreasonable, where a cause of action arises from alleged defects in his product, to say that the use of such products in the ordinary course of commerce is sufficient contact with this State to justify a requirement that he defend here." 176 N.E.2d at 766.

Similar rulings were made in McMahon v. Boeing Airplane Company, 199 F.Supp. 908 (D.C.Ill.1961); and Atkins v. Jones & Laughlin Steel Corp., 258 Minn. 571, 104 N.W.2d 888 (1960).

In holding that the tort was committed in Illinois where the injury was sustained, the Illinois court cited Restatement of Conflict of Laws, § 377. The same authority in § 326, states that in the formation of a bilateral contract, the contract is made at the place where the offer is accepted. Just as a tortious act may be committed within a state without the presence of the foreign corporation, or its agent, so may business be transacted in the state in the formation

of a contract without the presence of the nonresident or its agent.

Other cases holding that a nonresident may be subjected to the jurisdiction of the local court by reason of doing business in the state though not "physically present" therein are: Stephenson v. Duriron Co. (Alaska 1965) 401 P.2d 423, cert. den. 382 U.S. 956, 86 S.Ct. 431, 15 L.Ed.2d 360; Bibie v. T. D. Publishing Corp., 252 F.Supp. 185 (D.C.Cal.1966); Singer v. Walker, sub nom. Longines-Wittnauer Co. v. Barnes Reinecke, 15 N.Y.2d 443, 464, 261 N.Y.S.2d 8, 24, 209 N.E.2d 68 (1965), and commentary in McKinney's Consol.Laws of N.Y., Book 7B Supp., p. 47. See also: 1 Barron & Holtzoff (Wright Revision 1960) § 179; 2 Moore Federal Practice, par. 4.25 (3–5); 73 Harvard Law Rev. 911–934.

In Northern Supply, Inc. v. Curtis-Wright Corporation (Alaska 1965) 397 P. 2d 1013, an Alaska resident brought action against a foreign corporation upon a breach of warranty. Although not a decisive factor, the nonresident defendant corporation did send representatives to Alaska to assist the local dealer in culminating the sale of the defective equipment. The court held against the defendant's contention that it had not submitted to the local jurisdiction because it effected the sale through an independent contractor, and because it was transacting business only in interstate commerce.

In the case at bar Cessna did not send representatives into Idaho to assist in making the sale to plaintiff. However, it did, through its distributor and retailer, send into Idaho sales promotion brochures and literature and its owner's service policy and warranty. These documents were exhibited to plaintiff and were used by the dealer in accomplishing the sale to plaintiff, all as intended by Cessna. Also, upon discovery of the defective condition of the engine in the aircraft purchased by plaintiff, and upon notice thereof to the distributor, the president and chief mechanic of the distributor and a representative of Continental Motors, manufacturer of the motor, came

to Idaho Falls, partially dismantled and examined the engine. Upon determining that it was defective, the vice president of the distributor conferred with Cessna by long distance telephone, after which the engine was removed from the aircraft and shipped to Ogden, Utah.

In Eclipse Fuel Engineering Company v. Superior Court, 148 Cal.App.2d 736, 307 P.2d 739 (1957), actions were brought for personal injuries alleged to have been suffered as the result of a boiler explosion. The appellate court held that the foreign corporation executing a contract whereby a sales agency in the state was given exclusive franchise for the sale of the corporation's products within a designated area, was doing business within the state so as to render it amenable to service of process.

"The essence of doing business is that the corporation is present within the state sufficiently to constitute it just and equitable that it be amenable to process within the state. Milbank v. Standard Motor Const. Co., 132 Cal.App. 67, 22 P.2d 271; Boote's Hatcheries, etc., Co. v. Superior Court, 91 Cal.App.2d 526, 528, 205 P.2d 31. The technical distinction between an independent contractor and an agent is, for this purpose at least, immaterial, except as it may be evidence one way or the other. Thew Shovel Co. v. Superior Court, 35 Cal.App.2d 183, 95 P.2d 149; Moore Machinery Co. v. Stewart-Warner Corp., D.C., 27 F.Supp. 526. It would seem, authority lacking, that the same principle should apply as to the difference between a factor and an agent or employee. Thus the provision in the contract that the parties consider Obergfel to be an independent contractor seems insufficient to absolve the corporation from amenability to service. Thew Shovel Co. v. Superior Court, supra. The essential thing is merely whether the corporations are present within the state, whether they operate through an independent contract, agent, employee or in any other manner." Fielding v. Superior Court, 111 Cal.App.2d 490, 244 P.2d 968, at 970 (1952).

" 'Regie might choose to arrange its marketing process through a hierarcy of its own agents and employees. Then, by establishing agents in California to sell its products, it would undoubtedly be amenable to suit in this state. For reasons of its own it chooses to market its products through a wholly-owned American subsidiary and a network of independently-owned distributorships and dealerships. These choices on its part effect little, if any, alteration in the jurisdictional situation. The "contacts" exist one way or the other and for precisely the same purposes. The differences are differences only in form and description. * * *' " Regie Nationale Des Usines Renault, etc. v. Superior Court, 208 Cal.App.2d 702, 25 Cal.Rptr. 530 (1962).

See also: Delray Beach Aviation Corp. v. Mooney Aircraft, Inc. (5th Cir. 1964) 332 F.2d 135; Cosper v. Smith & Wesson Arms Co., 53 Cal.2d 77, 346 P.2d 409 (1959).

### Due Process

The old rule announced in Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878), limiting the process of a state court to the territorial limits of the state, has been practically abandoned in cases involving foreign corporations. The Supreme Court in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945), said:

"Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. Pennoyer v. Neff, 95 U.S. 714, 733, 24 L. Ed. 565 [572]. But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that

in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' (Citations)." 326 U.S. 316, 66 S.Ct. 158, 90 L.Ed. 101.

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. (Citations) Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment in personam against an individual or corporate defendant with which the state has no contacts, ties, or relations. (Citations).

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. (Citations)." 326 U.S. at 319, 66 S.Ct. at 159, 160, 90 L.Ed. at 103.

In McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the court held that the defendant, a Texas corporation, was amenable to California process issued in an action brought by the beneficiary of an insurance policy issued by defendant and delivered by mail to the insured in California, though that was the only business done by defendant in that state. The court observed that the contract constituted a substantial contact by the defendant with the state of California, and gave that state an interest in providing an effective means of redress for its resident when the insurer refused payment of the claim.

The facts in this case indicate that through the distributor arrangement, set up by Cessna, and the local dealer appointed thereunder, Cessna enjoyed practically the same advantages and benefits to its business from sales of its products in this state, as it would have done through officers or agents directly representing it in this state. It has exercised the privilege of doing business here and has enjoyed the protection of the laws of this state. Obviously the state has a legitimate interest in providing its residents a local forum in which to assert claims arising out of contracts or obligations incurred by Cessna in the prosecution of its business in this state. It is consonant with equity and fair dealing to require Cessna to come to this state to defend against such claims. Other than the contentions hereinabove discussed, defendant does not urge any defect in the process which was served upon it in Kansas: that it was not served upon a proper officer; nor that the service as made did not give it sufficient notice of the action and opportunity to defend. There was no want of due process. McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). Also see: Bibie v. T. D. Publishing Corp., 252 F.Supp. 185 (D.C.Cal.1966); Phillips v. Anchor Hocking Glass Corp., 100 Ariz. 251, 413 P. 2d 732 (1966); Tice v. Wilmington Chemical Corp. (Iowa 1966) 141 N.W.2d 616; Stephenson v. Duriron Co. (Alaska 1965) 401 P.2d 423, cert. den. 382 U.S. 956, 86 S. Ct. 431, 15 L.Ed.2d 360; Horn Construction, Inc. v. Stran-Steel Corp., 26 Conn.Sup. 201, 216 A.2d 833 (1965); Delray Beach Aviation Corp. v. Mooney Aircraft, Inc. (5th Cir. 1964) 332 F.2d 135; Ehlers v. United States Heating & Cooling Mfg. Corp., 267 Minn. 56, 124 N.W.2d 824 (1963); Hoag-

land v. Springer, 75 N.J.Super. 560, 183 A. 2d 678 (1962); Regie Nationale Des Usines Renault, etc. v. Superior Court, 208 Cal.App. 2d 702, 25 Cal.Rptr. 530 (1962); Gray v. American Radiator & Standard Sanitary Corporation, 22 Ill.2d 432, 176 N.E.2d 761 (1961); Beck v. Spindler, 256 Minn. 543, 99 N.W.2d 670 (1959); S. Howes Co. v. W. P. Milling Co., (Okl.1954) 277 P.2d 655.

In arriving at our decision herein, the following references have been helpful: McLaughlin, Supplementary Practice Commentary, McKinney's Consolidated Laws of New York, § 302, Supp. p. 45 (1965); Currie, The Growth of the Long Arm— Eight Years of Extended Jurisdiction in Illinois, 1963 U.Ill.L.F. 533; Hazzard, A General Theory of State Court Jurisdiction, 1965 Sup.Ct.Rev. 241; Peterson, Jurisdiction of Idaho Courts over Nonresidents, 36 Idaho State Bar Proceedings 58 (1962);

Stimson, Conflict of Laws, When Does a Court Have Jurisdiction, 45 A.B.A. Journal 569 (1959); Von Mehren and Trautman, Jurisdiction to Adjudicate—A Suggested Analysis, 79 Harv.L.Rev. 1121 (1966); Development in the Law of State Court Jurisdiction, 73 Harv.L.Rev. 911, 919–966 (1960); Personal Jurisdiction over Nonresidents— The Louisiana "Long Arm" Statute, Comment, 40 Tulane L.Rev. 366 (1966); Nelson & Koontz, Expanding In Personam Jurisdiction over Nonresidents, 4 Idaho Law Notes 21 (1961).

The order appealed from is reversed with directions to the trial court to fix a reasonable time for the defendant foreign corporation to plead further.

Costs to appellant.

McFADDEN, C. J., and McQUADE, SMITH and SPEAR, JJ., concur.