699 P.2d 1349

STATE of Idaho, Plaintiff,
Counter-defendant,

v.

MITCHELL CONSTRUCTION CO., a cor-
poration, Defendant, Counter-claimant,
Third party plaintiff-appellant,

and

St. Paul Fire & Marine Insurance Compa-
ny, Defendant-counterclaimant-
appellant,

and

g.j. Sprute & Company, Third
party defendant,

and

The Neogard Corporation, Third party
defendant-respondent,

and

Linton, Inc., and Foam Systems Co.,
Third party defendants.

No. 14938.

Supreme Court of Idaho.

June 13, 1984.

On Rehearing April 30, 1985.

Steven Richert, of Green, Service, Gasser & Kerl, Pocatello, Idaho, for defendant, counter-claimant, third party plaintiff-appellant Mitchell Const. Co.

Brian K. Julian, of Quane, Smith, Howard & Hull, Boise, Idaho, for third party defendant-respondent Neogard Corp.

BAKES, Justice.

Appellant, Mitchell Construction, was awarded the general contract to construct an office building to house the State of Idaho Department of Agriculture. All phases of the building have been completed except the roof, which is allegedly defective and has never been approved or accepted by the state. The state sued Mitchell for the "cost of repair or replacement" of the roof. In order to indemnify its potential liability, Mitchell filed third party complaints against the architect, the roof subcontractor Linton, Inc., and Linton's two major suppliers, one of which is respondent Neogard Corporation of Dallas, Texas.

Neogard developed an "elastomeric" roofing process, which is a layer of urethane foam sandwiched between flexible membranes, all of which is applied through a spraying process. Neogard manufactured the membrane materials and supplied them to the subcontractor along with application specifications. Neogard was instrumental, through its sales representative, in persuading the state's architect to include Neogard's elastomeric roof in the general contract specifications as an alternate type roof. Neogard was also instrumental in locating a licensed applicator to apply the roof as the subcontractor when the state architect ultimately approved an elastomeric roof for the building. However, Neogard had no direct dealings with Mitchell in negotiations, nor did Neogard sell any products directly to Mitchell.

Mitchell alleged that Neogard is liable for the defective roof on the theories of negligence, strict liability and breach of implied and express warranties. The district court granted summary judgment to Neogard, holding that: (1) the damages sought are merely economic damages; (2) economic damages cannot be recovered in negligence and strict liability actions; and (3) economic damages cannot be recovered in breach of implied and express warranty actions in the absence of privity of contract. Mitchell appealed the grant of summary judgment to Neogard, and assigned as error the district court's holding on only two issues: (1) whether "privity of contract should be a prerequisite to a products liability action based on express warranty," and (2) whether "the loss suffered by the State of Idaho amounted to economic loss . . . ."

Regarding the economic loss characterization issue, Mitchell asserts that the loss suffered by the state is property damage rather than economic loss which our prior cases have held will not support a tort action in either negligence or strict liability. *Clark v. International Harvester Co.*, 99 Idaho 326, 581 P.2d 784 (1978). However, Mitchell has produced no evidence by affidavit, and the record contains no evidence of any damage to any property other than the defective or damaged roof. Our opinion in *Salmon Rivers Sportsmen Camps, Inc. v. Cessna Aircraft Co.*, 97 Idaho 348, 351, 544 P.2d 306, 309 (1975), held that "[e]conomic loss includes cost of repair and replacement of defective property which is the subject of the transaction . . . ." While viewing the record most favorably to Mitchell, the party opposing the motion for summary judgment, we nevertheless find that there is no issue of material fact in regard to the characterization of the damage as economic loss, and therefore the district court did not err in granting summary judgment against Mitchell on its negligence and strict liability claims.

Mitchell's other assignment of error asserts that the district court erred in requiring privity of contract as a prerequisite to recovery on the theory of express warranty. The trial court granted summary judgment based upon the failure of Mitchell to show any privity of contract with Neogard, analogizing to our decision in *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.*, 97 Idaho 348, 544 P.2d 306 (1975). That case held that there must be privity of contract in order to sustain an action to recover only economic losses on the theory of implied warranty. On Mitchell's express warranty claim, the trial court specifically noted that the Court in the *Salmon Rivers* case had left open the question of whether or not a claim of breach of express warranty required privity of contract. The trial court concluded that privity was also necessary for a claim upon express warranty. The trial court arrived at its conclusion based upon language in both *Salmon Rivers* and *Clark v. International Harvester Co.*, which indicated that express and implied warranties arise out of agreement between the parties.

In our view, there is insufficient evidence in the record to support an issue of fact as to Mitchell's claim of the existence of an express warranty, and accordingly we affirm. The defendant Neogard, in the summary judgment proceeding, submitted an affidavit asserting that no express warranties were given regarding their product. Mitchell filed no affidavits in opposition to Neogard's motion for summary judgment. Furthermore, the record contains no evidence that Mitchell purchased any product directly from Neogard which might give rise to a sales contract containing an express warranty. The record contains no evidence that representations, written or oral, were made to Mitchell by Neogard outside a sales agreement which could be the basis of an express warranty contract. Neither does the record contain any express warranty contract between Neogard and the State of Idaho which might arguably have been made expressly for Mitchell's benefit.[1] "A mere scintilla of evidence will not create an issue [of material fact]" and defeat a claim for summary judgment. *Jephson v. Ambuel*, 93 Idaho 790, 793, 473 P.2d 932, 935 (1970). Even viewing the evidence most favorably to Mitchell, we nevertheless conclude that there are no genuine issues of material fact as to Mitchell's claim that it is the recipient or beneficiary of an express warranty from Neogard. We therefore do not address the issue of privity of contract in express warranty.

The district court's grant of summary judgment to Neogard is affirmed. Costs to respondent. No attorney fees allowed.

SHEPARD, J., concurs.

DONALDSON, Chief Justice, concurring and concurring in result.

I concur in all aspects of the majority opinion except as to that portion which discusses *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.*, 97 Idaho 348, 544 P.2d 306 (1975). As to that portion of the opinion, I concur in result only, as I must express my concern regarding the continued validity of our previous holding in *Salmon Rivers*. Therein, we stated "that privity of contract is required in a contract action to recover economic loss for breach of implied warranty." *Id.* at 354, 544 P.2d 306. While it must be

---

1. Although not argued by Mitchell in its brief on appeal, the record does reflect an advertising brochure apparently given to the state's architect by Neogard's agent which, while primarily describing the elastomeric roofing system and its specifications, states that "the Neogard Corporation jointly guarantees every project with its applicators." However, the record does not reflect that Mitchell was ever aware of this brochure when Mitchell entered into the roofing subcontract with Linton, Inc., nor does the record reflect that this statement was part of the "basis of the bargain" as that phrase is used in the analogous circumstance covered by the U.C.C., I.C. § 28-2-313(1).

noted that there is a split of authority on this issue, the factors enunciated by the Alaskan Supreme Court in *Morrow v. New Moon Homes, Inc.,* 548 P.2d 279 (Alaska 1976), deserve our consideration.

"The rationale for the widespread abolition of the requirement of privity stems from the structure and operation of the free market economy in contemporary society; it was succinctly summed up not long ago by the Supreme Court of Pennsylvania:

> " 'Courts and scholars alike have recognized that the typical consumer does not deal at arms length with the party whose product he buys. Rather, he buys from a retail merchant who is usually little more than an economic conduit. It is not the merchant who has defectively manufactured the product. Nor is it usually the merchant who advertises the product on such a large scale as to attract customers. We have in our society literally scores of large, financially responsible manufacturers who place their wares in the stream of commerce not only with the realization, but with the avowed purpose, that these goods will find their way into the hands of the consumer. Only the consumer will use these products; and only the consumer will be injured by them should they prove defective.' [*Kassab v. Central Soya,* 432 Pa. 217, 246 A.2d 848, 853 (1968) (footnote omitted)].

"The policy considerations which dictate the abolition of privity are largely those which also warranted imposing strict tort liability on the manufacturer: the consumer's inability to protect himself adequately from defectively manufactured goods, the implied assurance of the maker when he puts his goods on the market that they are safe, and the superior risk bearing ability of the manufacturer. In addition, limiting a consumer under the [Uniform Commercial] Code to an implied warranty action against his immediate seller in those instances when the products defect is attributable to the manufacturer would effectively promote circularity of litigation and waste of judicial resources."

*Morrow, supra* at 289.

Moreover, the legislature has enacted the Uniform Commercial Code which contains a comprehensive and finely tuned statutory mechanism for dealing with the rights of parties to a sales transaction regarding economic losses. *Clark v. International Harvester,* 99 Idaho 326, 581 P.2d 784 (1978). The UCC leaves to the courts the question of whether vertical privity of contract will be required in an action for breach of warranty. I.C. § 28–2–318, comment 3.

The fear that an implied warranty action would subject manufacturers to liability for damages unknown and unlimited in scope is unfounded. *Morrow, supra* at 291. Provisions are available under the UCC to limit the scope of a manufacturer's potential liability by use of the disclaimer provisions, I.C. § 28–2–316, and by use of the limitation of remedies provisions, I.C. § 28–2–719. "Moreover, the UCC provisions provide the Court with ample room for the exercise of wide judicial discretion to ensure that substantial justice results in particular cases. *See, e.g.,* I.C. §§ 28–2–302 and –2–719(3) (concerning unconscionable clauses and contracts), and I.C. § 28–1–203 (imposing a general obligation of good faith)." *Clark, supra* at 335, 581 P.2d 784.

In view of these considerations, I cannot concur in the adoption or approval of our previous holding in *Salmon Rivers.*

HUNTLEY, Justice, dissenting.

I dissent on two bases.

First, I concur with the reasoning expressed in the concurring opinion of Justice Donaldson to the effect that the continued validity of *Salmon Rivers,* 97 Idaho 348, 544 P.2d 306 (1975), is questionable—the requirement in *Salmon Rivers,* of privity

in implied warranty for economic loss did not make sense when the decision was written and its application has resulted in substantial injustice to many litigants. We should simply overrule that case at this time.

The difficulties inherent in the reasoning process used to justify the continued validity of *Salmon Rivers* is concisely stated in the appellant's brief as follows:

> Additionally, the Alaska decision of *Morrow v. New Moon Homes, Inc.*, 548 P.2d 279 (Alaska 1976), provides an excellent example of the prevailing privity requisite analysis. Like the *Clark* decision, the *Morrow* court rejected recovery of economic loss in tort theories, but astutely divided the term "economic loss" into the categories of "direct economic loss" and "consequential economic loss". The court quoting from a Note found in 66 Columbia Law Review 917, 918 (1966), summarized the distinction as follows:

> > "Direct economic loss may be said to encompass damage based on insufficient product value; thus, direct economic loss may be 'out-of-pocket'—the difference in value between what is given and received—or 'loss of bargain'—the difference between the value of what is received and its value as represented. Direct economic loss also may be measured by cost of replacement and repair. Consequential economic loss includes all indirect loss, since its [sic] loss of profits resulting from inability to make use of the defective product."

It should be noted that the *Salmon Rivers* decision also relied upon the same Columbia Law Review Note entitled "Economic Loss In Products Liability Jurisprudence". Justice Rabinowitz writing the opinion for the *Morrow* court, then concluded:

> "The fear that if the implied warranty action is extended to direct economic loss, manufacturers will be subjected to liability for damages of unknown and unlimited scope would seem unfounded. The manufacturer may possibly delimit the scope of his potential liability by use of a disclaimer in compliance with A.S. 45.05.100 or by resort to the limitations of authorized in A.S. 45.05.230. The statutory rights not only preclude extending the theory of strict liability in tort, *supra*, but also make highly appropriate extension of the theory of implied warranties. Further, by expanding warranty rights to redress this form of harm, we preserve '... the well developed notion that law of contract should control actions for purely economic losses and the law of tort should control actions for personal injuries.' We therefore hold that a manufacturer can be held liable for direct economic loss attributable to a breach of his implied warranties, without regard to privity of contract between the manufacturer and the ultimate purchaser."

Unlike *Salmon Rivers*, *Morrow* abolished the privity requirement for an action in warranty for direct economic loss against a manufacturer not in privity with the ultimate consumer. Both decisions, however, relied upon the California case of *Seely v. White Motor Co.*, [63 Cal.2d 9, 45 Cal.Rptr. 17] 403 P.2d 145 (1965), for bedrock support to deny liability for economic loss in negligence. Justice Bakes in *Clark v. International Harvester* also recited from the *Seely* decision. Although the lower court in the present circumstances looked to *Salmon Rivers* and *Clark* for assistance when denying an express warranty action without privity, the Judge apparently overlooked or rejected the following analysis and conclusion of Justice Traynor in the *Seely* case:

> "Defendant included the following promise in the printed form of the purchase order signed by plaintiff: 'The White Motor Company hereby war-

rants each new motor vehicle sold by it to be free from defects in material and workmanship under normal use and service, its obligation under the warranty being limited to making good at its factory any part or parts thereof. * * * ' This promise meets the statutory requirement for an express warranty: 'Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the good relying thereon.' (Civ.Code, § 1732; cf. Com.Code, §§ 2313, 2314.) The natural tendency of White's promise was to induce buyers to rely on it, and plaintiff did so rely in purchasing the goods. The reliance on the warranty, and the warranty itself, are manifested by plaintiff's continued efforts to have the truck repaired, and by defendant's acceptance of the responsibility to correct the galloping. The statute requires only that plaintiff rely on the warranty. It does not additionally require that he be aware that it was made by the manufacturer instead of the dealer to reach the one who in fact made it. Surely if plaintiff sought to have a part replaced that was covered by the warranty, White could not escape its obligation by showing that plaintiff thought the warranty White made was by the dealer.

Defendant contends that its limitation of its obligation to repair and replacement, and its statement that its warranty 'is expressly in lieu of all other warranties, expressed or implied,' are sufficient to operate as a disclaimer of responsibility in damages for breach of warranty. This contention is untenable. When, as here, the warrantor repeatedly fails to correct the defect as promised, it is liable for the breach of that promise as a breach of warranty. (*Rose v. Chrysler Motors Corp.*, 212 Cal.App.2d 755, 762–763, 28 Cal.Rptr. 185, 99 A.L.R.2d 1411; *Allen v. Brown*, 181 Kan. 301, 308, 310 P.2d 923.) *Since there was an express warranty to plaintiff in the purchase order, no privity of contract was required.* (See *Burr v. Sherwin Williams Co.*, 41 Cal.2d 682, 696, 268 P.2d 1041.) Plaintiff also gave reasonable notice of the defect. (Civ.Code, § 1769; cf. Com.Code, § 2607.)" (emphasis added).

Mitchell Construction Company submits that based upon the current development of Idaho law, a plaintiff not in privity with a manufacturer may still pursue a recovery for economic loss in an action for breach of an express warranty. The remarks of Justice Bakes in *Clark* and the reliance upon *Seely v. White Motors* almost compels the conclusion that an express warranty action may be pursued absent privity. The lower court erred in granting summary judgment to The Neogard Corporation upon the allegation of Mitchell Construction Company that Neogard breached an express warranty.

Secondly, I must respectfully dissent from the suggestion that there was no privity in the instant case. The record established the Neogard representative, Greg Chapman, negotiated directly with the state architect and Mr. Mitchell himself relative to the anticipated performance and capabilities of the Neogard product.

A letter from the architect employed by the state to Linton Incorporated in care of Mitchell Construction Company stated:

"We and the State, fully expect Linton, Insulcoat and Neogard, to be aware that the warrantys [sic] and certification will be honored and enforced if necessary".

As a result of that correspondence the State issued change order no. 1, the deposition of the state architect reading:

Q. ... do you have any knowledge as to why that sentence is within that letter?

A. It is in keeping with our change order no. 1.

Q. How is it within keeping with that change order?

A. "Roof warranty/guarantee consigned by manufacturer and roofing contractor to be in effect", on the project.

Q. "As architect on the project, Mr. Kelly being one of the subordinates of you, I would assume you are looking toward Linton, Insulcoat and Neogard for warrantys [sic] on the roof"

MR. KREIS: Object to the form of the question.

A. "Not necessarily. Let's note the address, Linton Incorporated in care of Mitchell Construction Company. Our bond, our insurance policy, our dealings are with one organization on a building, that organization is the general contractor. *We look to the general contractor for the enforcement of warrantys, [sic] guarantees and performance, he and only he.*" (emphasis added).

In the foregoing context the requirement of privity of the type required by *Salmon Rivers, supra,* would appear to be founded neither upon logic nor sound legal principle.

BISTLINE, Justice, concurring and specially concurring.

Although I have concurred in the Court's judgment and in the opinion, it would be less than candid were I not to admit being troubled by the views of the Chief Justice expressed in his separate opinion. The *Salmon Rivers* case was before my time, and in reviewing it I observe that the full Court was not then involved. In fact, of the Court's present membership, only Justice Donaldson participated in the case, and it is his voice now heard questioning its continued validity as sound precedent. I am also somewhat at a loss to fully understand why in legal theory it cannot be said that a defective roof does not directly

cause resultant injury to the building as a whole. And, as is very often so, it once again seems that this is another case where it would seem better that liability not be tried without a full development of the facts and circumstances—which is difficult to accomplish on a motion for summary judgment.

## ON REHEARING

■ The petition for rehearing in the above entitled action was granted and the matter reargued. The Court has reviewed the record and considered the arguments presented by counsel. Bakes, J., and Shepard, J., continue to adhere to the views expressed and the conclusions reached in the earlier opinion authored by Bakes, J. Donaldson, C.J., continues to adhere to the views expressed and the conclusion reached in his opinion concurring and concurring in the result.

HUNTLEY, J., continues to adhere to the views expressed and the conclusions reached in his earlier dissent.

BISTLINE, Justice, dissenting.

Earlier I concurred in the opinion authored by Justice Bakes. Now, after rehearing, I am persuaded otherwise. As I read the district court's decision, a copy of which is appended, it is predicated upon *Salmon Rivers Sportman Camps, Inc. v. Cessna Aircraft Co.,* 97 Idaho 348, 544 P.2d 306 (1975). I now fully agree with the views earlier expressed by Chief Justice Donaldson and Justice Huntley that *Salmon Rivers* should be overruled, and so vote.

Unless I misread Judge Schroeder's opinion, he would not have granted the summary judgment if *Salmon Rivers* had not been in place. If, as it appears, there are three votes to overrule that case, the summary judgment should be reversed and the case remanded to the district court for reconsideration.

342

## APPENDIX

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

STATE OF IDAHO, Plaintiff,

vs.

MITCHELL CONSTRUCTION COMPANY, a corporation, and ST. PAUL FIRE AND MARINE INSURANCE COMPANY, a Surety, Defendants.

and

MITCHELL CONSTRUCTION COMPANY, a corporation, Third-Party Plaintiff,

vs.

g.j. SPRUTE AND COMPANY, THE NEOGARD CORPORATION, LINTON, INC., and FOAM SYSTEMS, INC., Third-Party Defendants.

Case No. 74095

Filed Dec. 9, 1982

### MEMORANDUM OPINION AND ORDER

The above-named matter is before the court upon Neogard Corporation's motion for summary judgment on the third-party complaint of Mitchell Construction Company. The Neogard Corporation supplied the roofing materials to Linton, Inc., which subcontracted with Mitchell Construction to apply the Neogard system. Mitchell Construction seeks to recover from Neogard on express and implied warranty theories and in tort.

This court previously held that the State of Idaho seeks to recover only economic loss from Mitchell Construction; which in turn seeks reimbursement from the third-party defendants for any liability it may have to the State of Idaho. The decision in *Clark v. International Harvester Co.*, 99 Idaho [326] 327 [581 P.2d 784] (1978), establishes that a seller cannot be held liable for purely economic loss under either negligence or strict liability theory. Thus, Neogard's motion for summary judgment should be granted on the theories of negligence and strict liability.

If Mitchell Construction can establish privity of contract with Neogard, the existence and breach of an implied warranty of fitness or merchantability constitute questions of fact. If not, summary judgment for Neogard is proper because under *Salmon Rivers Sportman Camps, Inc., v. Cessna Aircraft Co.*, 97 Idaho 348 [544 P.2d 306] (1975), there can be no recovery based on implied warranty for purely economic loss unless the parties are in privity of contract.

The affidavit of Reginald Chapman shows that the Neogard Corporation sold roofing products to Linton, Inc., but made no sales directly to Mitchell Construction. A copy of the contract between Linton, Inc., and Mitchell Construction is attached to the affidavit. That agreement provides that Neogard would furnish Linton with materials and supervisory services. Linton was required to apply and maintain the Neogard materials according to certain specifications. Provision was made for allocating the cost of repairs between the parties to the contract. Also attached is the agreement between Mitchell Construction as general contractor and Linton, Inc., as subcontractor. By that agreement Linton was to apply a urathane roof system in accord with the plan specifications. There was no contract between the Neogard Corporation and Mitchell Construction. However, if Mitchell can show that Linton was acting as an agent for Neogard, the requisite privity would be established.

The record shows that the Neogard Corporation and Linton, Inc., are separate business entities. Their business relationship on the subject construction project was governed by the applicator agreement

which described Linton as an independent contractor. The record shows that Linton acted independently of Neogard in signing the contract with Mitchell Construction, even though an employee of Neogard was instrumental in bringing them together. All of the parties were aware of the functions each of these businesses would serve on the project. There is nothing in the record to show that Neogard held out Linton to be an agent. Rather, the record shows that representatives of Mitchell Construction knowingly contracted with Linton, Inc., as subcontractor, which in turn would buy Neogard materials. Since there was no contract between Mitchell Construction and the Neogard Corporation and the record does not support a finding of agency, there was no privity between those parties. The cause of action on the theory of implied warranty fails.

Whether privity of contract is required for recovery of economic loss on the theory of breach of express warranty has not been decided by the Idaho Supreme Court. This footnote appears in *Salmon Rivers Sportsman Camps, Inc., v. Cessna Aircraft Co.*, 97 Idaho 348, 352 [544 P.2d 306] (1975):

"3. Dictum exists in *B.B.P. Ass'n., Inc. v. Cessna Aircraft Co.*, 91 Idaho 259, 264, 420 P.2d 134, 139 (1966), which suggests that privity of contract is not a prerequisite to liability for breach of express warranty is an action to recover economic loss. The issue in that case, however, focused upon the propriety of service of summons on a foreign corporation. The dictum, moreover, does not specify whether the liability absent privity would be in tort or contract. This court, in an appropriate case, shall address the issue directly."

This court is now faced with deciding whether privity is required to recover economic loss for breach of an express warranty.

As previously noted, the court in *Salmon Rivers* found that privity of contract is essential to recovery of economic loss in a contract action for breach of implied warranty. The court, in making this finding, stated the following:

"This conclusion primarily is founded upon the commercial nature of such an action and upon the legal principle that a contract, even including its implied terms, only arises from an agreement between two or more parties. We reach this conclusion irrespective of the Uniform Sales Act or the Uniform Commercial Code." *Id.* at 354 [544 P.2d 306].

This statement seems equally applicable to an action for breach of express warranty.

The court also stated the following in *Clark v. International Harvester Co.*, 99 Idaho 326 [581 P.2d 784] (1978), quoting from *Seely v. White Motor Co.*, [63 Cal.2d 9], 403 P.2d 145 (1965):

"[A manufacturer] can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will." 99 Idaho at 334 [581 P.2d 784].

Thus, the privity requirement has been imposed by the court to allocate risks between the buyer and the seller of a product. Absent a contract between the two, the court has decided that the seller should not be responsible for a failure of the product to function as the consumer expected unless he suffered personal injury or property damage. This leaves the consumer with recourse against the party with whom he did contract and that middleman with

recourse against the seller with whom he in turn contracted.

The difference between express and implied warranties under the code is that the subject matter of express warranties is defined by the parties and is, therefore, basically unlimited. Under I.C. § 28-2-313, an express warranty by the seller can arise in the following ways applicable to the subject transaction:

"(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."

The sections under which implied warranties arise, I.C. § 28-2-314 and 315 specify the subject matter of those warranties. There is no other difference which calls for distinctive treatment on the privity issue.

Neogard Corporation in part relies on I.C. § 28-2-318, which provides as follows:

"A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty."

Neogard asserts that a privity requirement has been eliminated only as this section permits. But Comment 3 to the section states:

"This section expressly includes as beneficiaries within its provisions the family, household, and guests of the purchaser. Beyond this, the section is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain."

As noted above, in *Salmon Rivers* the Idaho Supreme Court did not rely on I.C. § 28-2-318 in requiring privity for recovery of economic loss for breach of implied warranty. It appears that the Supreme Court's decision regarding privity in implied warranty actions is also applicable to express warranty actions. As previously noted, Mitchell Construction has failed to controvert Neogard's showing that the two were not in privity of contract.

Therefore, Neogard's motion for summary judgment is *granted.*

Dated this 8 day of December, 1982.

/s/ Gerald F. Schroeder
District Judge