# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 44784

PETRUS FAMILY TRUST DATED MAY 1, 1991, and EDMOND A. PETRUS JR., individually and as Co-Trustee of the Petrus Family Trust Dated May 1, 1991,

    Plaintiffs-Appellants-Cross Respondents,

v.

CHRIS KIRK, dba KIRK ENTERPRISES,

    Defendant-Respondent-Cross Appellants,

and

NANCY GENTRY-BOYD; TODD MCKENNA dba HOMECRAFT HOME INSPECTIONS; RE/MAX RESORT REALTY; KEVIN BATCHELOR; and DOES 1-4,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, February 2018 Term

2018 Opinion No. 28

Filed: April 4, 2018

Karel A. Lehrman, Clerk

---

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Valley County. Hon. Jason D. Scott, District Judge.

District court order granting summary judgment, affirmed.

Parsons Behle & Latimer, Boise, and Higgs, Fletcher & Mack LLP, San Diego, CA for appellants. John M. Morris argued.

Arkoosh Law Offices, Boise, for respondents. Daniel A. Nevala argued.

---

BURDICK, Chief Justice.

Petrus Family Trust and Edmond A. Petrus, Jr., individually and as trustee of the Petrus Family Trust (collectively, Petrus) brings this appeal from the Ada County district court. Petrus sued Chris Kirk d/b/a Kirk Enterprises (Kirk) and several other parties for claims arising from Petrus's purchase of a home Kirk built in McCall. Kirk moved for summary judgment, and the

1

district court granted the motion in Kirk's favor. The district court also awarded attorney fees to Kirk under Idaho Code section 12-121, apportioning the award so as to award Kirk fees only insofar as Kirk was required to defend against a frivolous claim. Petrus timely appeals the grant of summary judgment in favor of Kirk, and Kirk timely cross-appeals the apportionment of fees. For the reasons below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The material facts of this case are not in dispute. Kirk built a home located in McCall under an oral contract Kirk had with Nancy Gentry-Boyd. Kirk began construction in June 2004 and completed the home by September 2005. Gentry-Boyd paid Kirk and used the home for vacation purposes from 2005 until 2012.

In April 2012, Petrus purchased the home from Gentry-Boyd for vacation purposes under a Real Estate Purchase and Sale Agreement (PSA). The PSA required Gentry-Boyd to disclose certain property conditions before closing. As relevant here, in response to the PSA's inquiry of "any water intrusion or moisture related damage to any portion of the property," Gentry-Boyd answered "[n]o." Nor did Gentry-Boyd disclose any water intrusion in response to the PSA's directive to list "any other existing problems that [she] kn[e]w of concerning the property." A home inspection occurred before closing, and while water seepage in the crawlspace was noted, the home inspector assured Petrus it was "normal seepage for this type of property, this type of area, this type of house, this type of – you know, this is normal, nothing unusual."

Shortly after moving into the home in or around June 2012, Petrus discovered that a set of French doors in the home were swollen with water and did not open, close, or lock properly. When Petrus contacted Gentry-Boyd about the issue, Gentry-Boyd responded that "[t]he doors sometimes stick after the winter. If you keep them locked, they will dry out and function again[,]" notwithstanding that Gentry-Boyd had failed to disclose this condition on the PSA. Nor had this condition been discovered during the home inspection. Petrus notified Kirk of the issue by letter dated August 7, 2013. Kirk thereafter inspected the home on several occasions, and surmised that "at some point after construction on the Home was completed, the Home had been severely altered and damaged." Petrus eventually discovered extensive rot and mold from water intrusion and expended over $60,000 to remediate the water damage. Petrus and Kirk never reached an amicable resolution.

2

In March 2014, Petrus sued Kirk, Gentry-Boyd, and the home inspector. Petrus did not serve the initial complaint. Instead, Petrus filed a first amended complaint in September 2014, which Petrus later served. In the first amended complaint, as against Kirk, Petrus alleged claims for breach of the implied warranty of habitability and conspiracy to defraud. Thereafter, Petrus filed a second amended complaint in September 2015, which Petrus later served, alleging claims against Kirk that were substantially identical to the claims alleged in the first amended complaint. Various contract, tort, and consumer-protection claims were asserted against Gentry-Boyd and the home inspector, but those claims are not at issue in this appeal.[1]

As relevant here, Kirk moved for summary judgment in May 2016, contending, in part, that (1) Petrus's conspiracy-to-defraud claim was unsupported; and (2) Petrus's breach of the implied warranty of habitability claim was untimely under Idaho Code section 5-241(b). Petrus responded that the breach of implied warranty of habitability claim was timely under section 5-241(a) because it arose in tort, not in contract, and did not address the conspiracy-to-defraud claim. The district held a hearing on Kirk's summary judgment motion in June 2016, at which Petrus conceded summary judgment for Kirk was proper on the conspiracy-to-defraud claim, leaving only the breach of the implied warranty of habitability claim.

The district court granted summary judgment to Kirk, concluding Petrus's breach of the implied warranty of habitability claim arose in contract and was therefore untimely under section 5-241(b). Even if Petrus's claim arose in tort, the district court concluded it would be barred by the economic loss rule. Petrus timely moved for reconsideration, but the district court denied the motion after concluding Petrus had not offered any new argument or evidence that would warrant a different result. Thereafter, the district court awarded attorney fees to Kirk under Idaho Code section 12-121, apportioning the award so as to award fees to Kirk only insofar as he was required to defend against Petrus's conspiracy-to-defraud claim.

Petrus timely appeals the grant of summary judgment in favor of Kirk, and Kirk timely cross-appeals the apportionment of fees.

## II. ISSUES ON APPEAL

1. Did the district court err by granting summary judgment to Kirk?
2. Did the district court err by denying Petrus's motion for reconsideration?
3. Did the district court err in its apportionment of attorney fees to Kirk?

---

[1] Gentry-Boyd and the home inspector both settled with Petrus.

4.      Is Kirk entitled to attorney fees on appeal?

## III. ANALYSIS

**A.      The district court properly granted summary judgment to Kirk.**

This Court has explained that, when it reviews a summary judgment on appeal,

it does so under the same standards employed by the district court. "The fact that the parties have filed cross-motions for summary judgment does not change the applicable standard of review, and this Court must evaluate each party's motion on its own merits." Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Idaho R. Civ. P. 56(c).[2] Where the case will be tried without a jury, "the trial court as the trier of fact is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences." This Court freely reviews the entire record that was before the district court to determine whether either side was entitled to judgment as a matter of law and whether inferences drawn by the district court are reasonably supported by the record.

*Borley v. Smith*, 149 Idaho 171, 176–77, 233 P.3d 102, 107–08 (2010) (citations omitted).

The parties agree Idaho Code section 5-241 governs the fate of Petrus's claim for breach of the implied warranty of habitability. That statute provides as follows:

Actions will be deemed to have accrued and the statute of limitations shall begin to run as to actions against any person by reason of his having performed or furnished the design, planning, supervision or construction of an improvement to real property, as follows:
(a) Tort actions, if not previously accrued, shall accrue and the applicable limitation statute shall begin to run six (6) years after the final completion of construction of such an improvement.
(b) Contract actions shall accrue and the applicable limitation statute shall begin to run at the time of final completion of construction of such an improvement.
The times fixed by these sections shall not be asserted by way of defense by any person in actual possession or control, as owner, tenant, or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of an injury or death for which it is proposed to bring an action.
Nothing in this section shall be construed as extending the period prescribed by the laws of this state for the bringing of any action.

---

[2] Effective July 1, 2016, Idaho Rule of Civil Procedure 56 was amended. The relevant portion of the rule now provides: "The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a).

> As used in this section, the term "person" shall mean an individual, corporation, partnership, business trust, unincorporated organization, association, or joint stock company.

I.C. § 5-241. Section 5-241 is a statute of repose, not a statute of limitations, since its operation does not depend on the occurrence or discovery of injury. *Id.*; *accord Twin Falls Clinic & Hosp. Bldg. Corp. v. Hamill*, 103 Idaho 19, 23, 644 P.2d 341, 345 (1982); 54 C.J.S. *Limitations of Actions* § 7 (2017).

The interpretation of section 5-241 is not in dispute. Instead, the dispute is whether a breach of the implied warranty of habitability arises in contract or tort. If it arises in contract, as the district court found, section 5-241(b) applies to make the "applicable limitation statute . . . begin to run at the time of final completion of construction of such an improvement." In this case, that would mean Petrus's claim is untimely, as it was required to have been brought within four years of completion of construction, since the contract for construction was oral. I.C. §§ 5-241(b), 5-217; *see also Stapleton v. Jack Cushman Drilling & Pump Co.*, 153 Idaho 735, 738–40, 291 P.3d 418, 421–23 (2012). By contrast, if a breach of the implied warranty of habitability arises in tort, as Petrus contends, the action, "if not previously accrued, shall accrue and the applicable limitation statute shall begin to run six (6) years after the final completion of construction of such an improvement." I.C. § 5-241(a). That would mean Petrus's claim would now be timely because the applicable four-year statute of limitations under Idaho Code section 5-224 would have begun to run six years after the September 2005 completion of construction, thereby giving Petrus ten years to sue. *Id.*; I.C. § 5-224. As such, our primary inquiry is whether a breach of the implied warranty of habitability arises in contract or tort.

This Court first recognized the implied warranty of habitability in *Bethlahmy v. Bechtel*, 91 Idaho 55, 63–68, 415 P.2d 698, 706–11 (1966). In *Bechtel*, the Bethlahmys purchased a home from Bechtel that Bechtel had constructed. *Id.* at 57–59, 415 P.2d at 700–02. Bechtel, however, built the home atop an unsealed irrigation ditch, which caused significant water damage to the home and ultimately required the Bethlahmys to vacate the home. *Id.* The Bethlahmys sued Bechtel. *Id.* at 59, 415 P.2d at 702. In support of recovery, the Bethlahmys pointed to the "presence of the unsealed irrigation ditch through the lot and beneath the garage, coupled with the fact that the basement was not of waterproof construction, constituted major defects, known to [Bechtel], and unknown to [the Bethlahmys], and not discoverable upon reasonable inspection." *Id.* While the evidence was insufficient to show that Bechtel had committed fraud by

5

intentionally concealing the unsealed ditch, this Court reasoned that the Bethlahmys were not precluded from recovery. *Id.* at 63, 415 P.2d at 706. Rather, "[t]he pleadings and evidence presenting the issue of fraud were sufficient to present the issue of breach of warranty." *Id.* Looking to other jurisdictions, *Bechtel* observed that the "trend of judicial opinion is to invoke the doctrine of implied warranty of fitness in cases involving sales of new houses by the builder." *Id.* at 67, 415 P.2d at 710. This Court elected to follow suit and explained:

> The old rule of caveat emptor does not satisfy the demands of justice in such cases. The purchase of a home is not an everyday transaction for the average family, and in many instances is the most important transaction of a lifetime. To apply the rule of caveat emptor to an inexperienced buyer, and in favor of a builder who is daily engaged in the business of building and selling houses, is manifestly a denial of justice.
>
> The implied warranty of fitness does not impose upon the builder an obligation to deliver a perfect house. No house is built without defects, and defects susceptible of remedy ordinarily would not warrant rescission. But major defects which render the house unfit for habitation, and which are not readily remediable, entitle the buyer to rescission and restitution. The builder-vendor's legitimate interests are protected by the rule which casts the burden upon the purchase to establish the facts which give rise to the implied warranty of fitness, and its breach.

*Id.* at 67–68, 415 P.2d at 710–11 (citations omitted). While *Bechtel* did not address whether a breach of the implied warranty of habitability arose in contract or tort, *Bechtel* did explain that the claim would "entitle the buyer to rescission and restitution." *Id.* Rescission and restitution are remedies available in contract law. *See, e.g.*, 26 Williston on Contracts §§ 68:2, 68:3 (4th ed. 2017); Restatement (Third) of Restitution and Unjust Enrichment §§ 37, 38, 39, 54 (2011).

In the years after *Bechtel*, this Court acknowledged the implied warranty of habitability on several occasions. *See, e.g.*, *Sorensen v. Pickens*, 99 Idaho 564, 564, 585 P.2d 1275, 1275 (1978); *Mays v. Kast*, 96 Idaho 472, 472–73, 531 P.2d 234, 234–35 (1975); *Hafer v. Horn*, 95 Idaho 621, 623, 515 P.2d 1013, 1015 (1973); *Shrives v. Talbot*, 91 Idaho 338, 346, 421 P.2d 133, 141 (1966). While *Sorensen*, *Mays*, *Hafer*, and *Talbot* are notable for their references to recovery of contract remedies for a breach of the implied warranty of habitability, no substantive pronouncement elaborating on the implied warranty of habitability came from this Court until 1987 in *Tusch Enterprises v. Coffin*, 113 Idaho 37, 45–51, 740 P.2d 1022, 1030–36 (1987), from which the district court found it "clear, or at least readily inferable," that a breach of the implied warranty of habitability arises in contract. The district court is correct.

In *Tusch Enterprises*, 113 Idaho at 38, 740 P.2d at 1023, the Vander Boeghs contracted with Coffin, a general contractor, for the construction of three duplexes on the Vander Boeghs' land. Construction was completed by early 1976. *Id.* at 39, 740 P.2d at 1024. Starting in June 1978, Tusch Enterprises (Tusch) submitted three offers to purchase the duplexes from the Vander Boeghs, and the third offer was accepted in or around March 1979. *Id.* at 40, 740 P.2d at 1025. One month after Tusch closed on the duplexes, a duplex tenant notified Tusch that "[t]he walls had begun cracking around the windows and many of the doors would not close properly." *Id.* Tusch investigated further to find the duplexes' foundations were cracking. *Id.* Tusch

> expended a great deal of money remedying the problems. The structural defects have caused damage to the duplexes themselves and to the parking lot, and have caused losses in rental income, but [Tusch] has suffered no personal injuries and has suffered no damage to property other than that which was the subject of the duplex sales transaction.

*Id.* Tusch sued the Vander Boeghs and Coffin, alleging claims that included negligent design and construction of the duplexes and breach of the implied warranty of habitability. *Id.* This Court affirmed summary judgment in favor of the Vander Boeghs and Coffin on Tusch's negligence claim based on the economic loss rule,[3] as the only damages Tusch alleged were "lost rental income and property damage to the duplexes and the parking lot." *Id.* However, this Court reversed summary judgment that had been granted in favor of the Vander Boeghs and Coffin on Tusch's breach of the implied warranty of habitability claim. *Id.* at 45–51, 740 P.2d at 1030–36. As to the Vander Boeghs, triable issues of fact surrounded whether the Vander Boeghs acted as a "developer-builder [(and thus could be liable for breach of the implied warranty of habitability)] or merely an ordinary person with little expertise" who contracted with Coffin for construction. *Id.* at 49, 740 P.2d at 1034.

*Tusch Enterprises*'s analysis as to Coffin is more instructive in regards to Petrus's claim in this appeal. That analysis resolved the vexing question of "whether a subsequent purchaser of residential dwellings may assert a claim for breach of the implied warranty of habitability against the builder of the dwellings when there is no privity of contract between them." *Id.* Citing to other jurisdictions, this Court elected to dispose of such a privity requirement and thereby extended the warranty to subsequent purchasers, with the following caveat:

---

[3] In *Clark v. International Harvester Co.*, 99 Idaho 326, 333–36, 581 P.2d 784, 791–94 (1978), this Court recognized the economic loss rule and held that it barred recovery in negligence for pure economic losses sustained to the subject of the transaction.

> This extension of liability is limited to latent defects, not discoverable by a subsequent purchaser's reasonable inspection, manifesting themselves after the purchase. The standard to be applied in determining whether or not there has been a breach of warranty is one of reasonableness in light of surrounding circumstances. The age of the home, its maintenance, the use to which it has been put, are but a few factors entering into this factual determination at trial.

*Id.* at 50, 740 P.2d at 1035 (quoting *Barnes v. Mac Brown & Co., Inc.*, 342 N.E.2d 619, 621 (Ind. 1976)). As *Tusch Enterprises* reasoned, latent defects "will be just as catastrophic on a subsequent owner as on an original buyer and the builder will be just as unable to justify improper or substandard work." *Id.* at 49, 740 P.2d at 1034 (quoting *Richards v. Powercraft Homes, Inc.*, 678 P.2d 427, 430 (Ariz. 1984)). Accordingly, "[b]ecause the builder-vendor is in a better position than a subsequent owner to prevent occurrence of major problems, the cost of poor workmanship should be his to bear." *Id.* (quoting *Richards*, 678 P.2d at 430). In summary, *Tusch Enterprises* held that

> subsequent purchasers of residential dwellings, who suffer purely economic losses from latent defects manifesting themselves within a reasonable time, may maintain an action against the builder (or builder-developer, as the case may be,) of the dwelling based upon the implied warranty of habitability despite the fact that no privity of contract exists between the two.

*Id.* at 50–51, 740 P.2d at 1035–36.

A key consideration causing *Tusch Enterprises* to dispose of a privity requirement was that the economic loss rule barred Tusch from recovery in negligence. In that regard, this Court explained that if, "in the area of pure economic losses, negligence is to be preempted by contract principles [under the economic loss rule], then contract principles must be given a freer hand to deal with injuries the law has typically redressed." *Id.* at 50, 740 P.2d at 1035. In a footnote, *Tusch Enterprises* recited the following "respected authority" with approval:

> Historically, therefore, the only tort action available to a disappointed purchaser suffering intangible commercial loss has been the tort action of deceit for fraud and the only contract action has been for breach of a warranty, express or implied. This remains the generally accepted view. A few courts in recent years have permitted either a tort action for negligence or one in strict liability. Usually, the reason for so doing has been to escape the requirement of privity of contract as a prerequisite to recovery on a warranty theory. *But the elimination of this requirement for recovery on a contract-warranty theory would seem to constitute the more satisfactory technique.*

*Id.* at 50 n.8, 740 P.2d at 1035 n.8 (emphasis added) (quoting Prosser & Keeton, *The Law of Torts*, § 101, at 708 (5th ed. 1984)). Therefore, *Tusch Enterprises* plainly treated a breach of the

implied warranty of habitability as sounding in contract and dispensed with a privity requirement to enable contract law to "deal with" economic losses tort law could not address in this limited context. *Id.*

While Petrus asks this Court to reverse summary judgment in favor of Kirk and remand for further proceedings, "exactly" as this Court did in *Tusch Enterprises*, Petrus is mistaken. *Tusch Enterprises* reversed and remanded Tusch's breach of the implied warranty of habitability claim against Coffin after ruling that privity was not required. 113 Idaho at 50–51, 740 P.2d at 1035–36. Petrus's claim here is not barred by a lack of privity, but by contract-based statutes of repose and of limitations. As reasoned above, *Tusch Enterprises* does not assist Petrus, but, in fact, illustrates that Petrus's claim arises in contract. *Id.* at 49–51, 740 P.2d at 1034–36; *accord Adkison Corp. v. Am. Bldg. Co.*, 107 Idaho 406, 410–11, 690 P.2d 341, 345–46 (1984) ("In sum, breach of implied warranty actions for purely economic losses must be viewed in a contract setting with relevant contract principles."); 1A C.J.S. *Actions* § 132 (2017) ("Where the claim is for a breach of implied warranties of habitability and workmanlike construction, the claim is based on the contract not in tort.").

Petrus cites to *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.*, 97 Idaho 348, 544 P.2d 306 (1975), to contend that the absence of a privity requirement shows Petrus's claim arises in tort. In *Salmon Rivers*, this Court held that "privity of contract is required in a contract action to recover economic loss for breach of implied warranty." *Id.* at 354, 544 P.2d at 312. *Salmons Rivers* was a product-liability case involving a breach of implied warranty claim against an airplane manufacturer. *Id.* at 350, 544 P.2d at 308. The claim sought damages solely "for the cost of the airplane's removal and repair, and for the loss of the use of the aircraft during its repair"—*i.e.*, pure economic damages. *Id.* at 351, 544 P.2d at 309. The plaintiff, however, was not in privity of contract with the manufacturer. *Id.* This Court affirmed summary judgment for the manufacturer on that basis. *Id.* at 350, 544 P.2d at 308.

Petrus grabs dicta from *Salmon Rivers* and emphasizes how this Court quoted with approval that, "unless there is privity, liability to the consumer must be in tort and not in contract." *Id.* at 353–54, 544 P.2d at 311–12 (quoting William L. Prosser, *The Assault Upon the Citadel (Strict Liability to the Consumer)*, 69 Yale L. J. 1099, 1134 (1960)). Petrus therefore argues that, here, since privity is absent, Petrus's claim must arise in tort. *Salmon Rivers* does not assist Petrus. *Tusch Enterprises* specifically addressed *Salmon Rivers* and explained:

9

We recognize that in [*Salmon Rivers*], a case dealing with a sale of goods, we held privity of contract is a prerequisite to recovery of pure economic losses in an action for breach of implied warranty. Nonetheless, in *State v. Mitchell Construction Co.*, 108 Idaho 335, 699 P.2d 1349 (1984), three members of this Court expressed the view that this privity requirement should be abolished.[4] *Salmon Rivers* was decided prior to our decision in *Clark*, *supra*. As noted earlier, *Clark* held that a party suffering only economic losses could not recover under a negligence theory. The rationale behind that decision was to allow the law of contracts to resolve disputes concerning economic losses. If, however, in the area of pure economic losses, negligence is to be preempted by contract principles, as we ruled in *Clark*, then contract principles must be given a freer hand to deal with injuries the law has typically redressed. Therefore, we decline to extend the privity requirement enunciated in *Salmon Rivers* to the facts at hand. The instant case is not a goods case, and the question regarding the continued vitality of *Salmon Rivers* in such cases is better left to another day when a response on our part would be something more than mere dictum.

*Tusch Enters.*, 113 Idaho at 50, 740 P.2d at 1035 (internal citation omitted). In short, *Tusch Enterprises* was clear that a privity requirement was discarded so that contract law can "deal with" economic losses tort law cannot address in this limited context. *Id.*

This Court addressed the "continued vitality" of *Salmon Rivers* in *Ramerth v. Hart*, 133 Idaho 194, 198, 983 P.2d 848, 852 (1999). There, Ramerth sued a mechanic, Hart, for negligence and breach of implied warranty, claims allegedly arising from Hart's work on an airplane later sold by a third-party to Ramerth. *Id.* at 195–96, 983 P.2d at 849–50. This Court affirmed dismissal of the negligence claim under the economic loss rule "[b]ecause there [we]re no allegations of personal injury or property damage other than the cost to repair the airplane." *Id.* at 197, 983 P.2d at 851. This Court also affirmed dismissal of the implied warranty claim on the basis that there was no privity of contract between Ramerth and Hart. *Id.* at 198, 983 P.2d at 852. In doing so, this Court in *Ramerth* explained—clearly and unanimously—that "*Salmon Rivers* remains valid. We are not persuaded that the rule announced in *Salmon Rivers* should be further relaxed to allow a claim for breach of implied warranty on the facts of this case." *Id. Ramerth*, however, acknowledged that "[t]he primary argument advanced against the requirement of

---

[4] *Mitchell* temporarily cast doubt on whether privity was required to recover for breach of implied warranty, causing *Salmon Rivers* to be the subject of "substantial debate[.]" *Ramerth v. Hart*, 133 Idaho 194, 198, 983 P.2d 848, 852 (1999). In *Mitchell*, three members of the Court—Justices Bistline, Donaldson, and Huntley—wrote in special concurrences and dissents that *Salmon Rivers* should be overruled. 108 Idaho at 337–41, 699 P.2d at 1351–55. Nevertheless, *Salmon Rivers*'s privity requirement remains good law, as later clarified by *Tusch Enterprises*, 113 Idaho at 50, 740 P.2d at 1035, and, as will be discussed in the text above, *Ramerth*, 133 Idaho at 198, 983 P.2d at 852, and *American West Enterprises, Inc. v. CNH, LLC*, 155 Idaho 746, 751–52, 316 P.3d 662, 667–68 (2013).

privity is its perceived unfairness, particularly in light of the economic loss rule preventing plaintiffs from recovering economic damages in tort" and agreed

> that there may be cases where the plaintiff may be unfairly prejudiced by the operation of the economic loss rule in combination with the privity requirement articulated in *Salmon Rivers*. Given such a case, further relaxation of *Salmon Rivers* may be justified. We are not convinced that this is such a case.

*Id.*

*Salmon Rivers* was again addressed in *American West Enterprises, Inc. v. CNH, LLC*, 155 Idaho 746, 750–52, 316 P.3d 662, 666–68 (2013). In *CNH*, American West Enterprises (AWE) sued Case New Holland, Inc. (CNH), who manufactured an allegedly defective tractor engine. *Id.* at 665, 316 P.3d at 749. AWE hired a third-party mechanic to replace its tractor engine. *Id.* The third-party mechanic did so with an engine manufactured by CNH, and the engine later failed. *Id.* AWE thus sued CNH for breach of implied warranty. *Id.* The district court dismissed AWE's claim against CNH at summary judgment due to lack of privity between AWE and CNH, and this Court unanimously affirmed that ruling when AWE timely appealed. *Id.* at 750–52, 316 P.3d at 666–68. In doing so, this Court cogently catalogued the above-discussed cases and concluded *Salmon Rivers*'s requirement of privity barred AWE's claim. *Id.* As in *Ramerth*, *CNH* explained that "[p]rivity of contract is required in a contract action to recover economic loss for breach of implied warranty, potentially unless the application of this rule would have the effect of unfairly prejudicing the plaintiff." *Id.* at 752, 316 P.3d at 668. In dicta, *CNH* acknowledged that the Idaho Court of Appeals had addressed "the potential to relax the *Salmon Rivers* rule on the basis of unfair prejudice" and held that "a party is not unfairly prejudiced where the privity requirement and the economic loss rule work to preclude a party from recovering if the party had a viable cause of action against another party." *Id.* (citing *Nelson v. Anderson Lumber Co.*, 140 Idaho 702, 711, 99 P.3d 1092, 1101 (Ct. App. 2004)). As *CNH* then explained, the "mere inability to be fully compensated for losses is not sufficient to relax the *Salmon Rivers* rule." *Id.*

Based on the above, this Court's precedent instructs that privity of contract is required to recover economic loss flowing from a breach of implied warranty "unless the application of this rule would have the effect of unfairly prejudicing the plaintiff." *CNH*, 155 Idaho at 752, 316 P.3d at 668; *accord Ramerth*, 133 Idaho at 197, 983 P.2d at 851; *Tusch Enters.*, 113 Idaho at 50, 740 P.2d at 1035. One instance illustrating unfair prejudice is where a breach of the implied warranty of habitability is alleged, and the economic loss rule bars the plaintiff from tort recovery; in that

instance, the plaintiff cannot recover *in tort*, but can recover *in contract*, even absent privity of contract. *Tusch Enters.*, 113 Idaho at 50, 740 P.2d at 1035.

Not only do the above-discussed cases show that a breach of the implied warranty of habitability arises in contract, but this Court treated a breach of the implied warranty of workmanship[5] as arising in contract in *Employers Mutual Casualty Co. v. Donnelly*, 154 Idaho 499, 505, 300 P.3d 31, 37 (2013). There, the Donnellys suffered a house fire and hired Rimar Construction, Inc. (RCI) to perform repair work. *Id.* at 500, 300 P.3d at 32. Disputing the quality of RCI's work and alleging it caused a personal injury, the Donnellys later sued RCI for several claims, including for breach of the implied warranty of workmanship. *Id.* They "alleged substantial damages to property, physical injury, and loss of use." *Id.* RCI had a general liability insurance policy with Employers Mutual Casualty Company (EMC). *Id.* EMC sought a declaratory judgment against the Donnellys and RCI, alleging it had no duty to pay any damages to the Donnellys. *Id.* at 500–01, 300 P.3d at 32–33. The declaratory judgment action was stayed pending resolution of the Donnellys' claims against RCI. *Id.* at 501, 300 P.3d at 33. Ultimately, the jury found that RCI had breached the implied warranty of workmanship and awarded the Donnellys over $120,000 in damages sustained as a result of that breach. *Id.* When the declaratory judgment action was reinstated, judgment was entered in EMC's favor after the district court concluded EMC was not liable to the Donnellys for damages flowing from RCI's breach of the implied warranty of workmanship, as those were "contract-based damages" outside the scope of the insurance policy. *Id.*

This Court affirmed when the Donnellys timely appealed. *Id.* at 504–05, 300 P.3d at 36–37. In concluding the district court correctly classified the damages awarded from RCI's breach of the implied warranty of habitability as "contract-based," this Court explained as follows:

> The key determination for whether an implied warranty of workmanship—and therefore the insurance policy—covers the damages is whether the duty is based upon a contractual promise or if the duty can be maintained without the contract. In the special verdict, the jury found: there was a contract involving the remodeling project between RCI and the Donnellys; RCI did not substantially perform under the contract; a breach of contract caused damage to the Donnellys; and that RCI breached "the implied warranty of

---

[5] This Court has never elaborated on the differences, if any, between the implied warranties of *habitability* and *workmanship*. However, other sources have posited that the implied warranty of habitability focuses on the "quality of the structure," whereas the implied warranty of workmanship focuses on the "builder's conduct." *See* Wendy B. Davis, *Corrosion by Codification: The Deficiencies in the Statutory Versions of the Implied Warranty of Workmanlike Construction*, 39 Creighton L. Rev. 103, 106 (2006).

workmanship with regard to the manner in which it constructed the Donnelly remodel project." Based on the jury's verdict, the breach of implied warranty of workmanship occurred with regard to RCI's performance under the remodeling contract with the Donnellys. There is no duty beyond the contractual promise between RCI and the Donnellys. Since the insurance policy contains an express exclusion for contractual damages, we hold that the district court correctly found the awarded damages to be outside the scope of the insurance policy.

*Id.* at 505, 300 P.3d at 37; *see also Ervin Constr. Co. v. Van Orden*, 125 Idaho 695, 701–04, 874 P.2d 506, 512–15 (1993) (treating a breach of the implied warranty of workmanship as permitting recovery of contract damages).

The above reasoning espoused in *Donnelly* comports with this Court's efforts to distinguish between contract and tort. As acknowledged in *Donnelly*,

> [t]he law governing the ability to obtain remedies for breach of contract, as well as tortious behavior, is confusing, with few, if any, court decisions on the subject. Ordinarily, a breach of contract is not a tort. A contract may, however, create a state of things that furnishes the occasion for a tort. 38 Am. Jur. 662, *Negligence* § 20. If the relation of the plaintiff and the defendants is such that a duty to take due care arises therefrom irrespective of contract and the defendant is negligent, then the action is one of tort. To found an action in tort, there must be a breach of duty apart from the nonperformance of a contract. 52 Am. Jur. 379, *Torts*, § 26.
>
> . . . .
>
> It can also be said that if a cause of action for breach of a duty based on a contractual promise could also be maintained without the contract by virtue of a statutory or common law duty, then the action is founded upon tort, not contract.

*Id.* (quoting *Sumpter v. Holland Realty, Inc.*, 140 Idaho 349, 353–54, 93 P.3d 680, 684 (2004) (holding that malpractice action against realtors sounded in tort because the duties were statutorily imposed and would have existed without the contract)). Put another way,

> [i]n order for a cause of action to arise in tort, Claimants must establish the breach of a tort duty, separate and apart from any duty allegedly created by the contract." Furthermore, "negligent conduct and breach of contract are two distinct theories of recovery. Ordinarily, breach of contract is not a tort, although a contract may create the circumstances for the commission of a tort." But, "[t]he mere negligent breach or non-performance of a contract will not sustain an action sounding in tort, in the absence of a liability imposed by law independent of that arising out of the contract itself." Instead, "active negligence or misfeasance is necessary to support an action in tort based on a breach of contract; mere nonfeasance, even if it amounts to a willful neglect to perform the contract, is not sufficient."

*Baccus v. Ameripride Servs., Inc.*, 145 Idaho 346, 350, 179 P.3d 309, 313 (2008) (citations omitted) (holding that contractor was liable in tort to third-party-employee for failing to perform

safety-related obligation arising from contactor's contract with employer, as third-party-employee was relying on performance of the obligation for his safety, and non-performance of the obligation created a foreseeable risk of physical injury). Here, however, Petrus has not identified any duty "separate and apart" from a duty created by Kirk's oral contract for construction with Gentry-Boyd; nor has Petrus alleged "active negligence or misfeasance . . . based on a breach of contract." *See id.*; *accord Donnelly*, 154 Idaho at 505, 300 P.3d at 37.

We conclude the district court is correct that a breach of the implied warranty of habitability arises in contract, making Petrus's claim untimely. This conclusion, however, is not to say that a home buyer is left without a tort remedy when a builder negligently constructs a home and causes tort damages. In that scenario, an appropriate tort claim may be asserted, and our ruling today does not foreclose that claim. While Petrus contends that the claim should not have accrued until it was ascertained,[6] and that public policy "demands that [such] claim . . . cannot possibly begin to run until the breach manifests itself and is either known or reasonably should be known to the home buyer," we are without power to amend section 5-241(b). *See* Idaho Const. art. III, § 1 ("The legislative power of the state shall be vested in a senate and house of representatives."); Idaho Const. art. II, § 1 ("[N]o . . . collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others . . . ."). Because Petrus's claim arises in contract and is thus untimely, summary judgment for Kirk is affirmed. In light of this ruling, we need not reach Kirk's additional arguments concerning the economic loss rule, Idaho's Notice and Opportunity to Repair Act, and waiver.

**B.** **The district court properly denied Petrus's motion for reconsideration.**

When a motion to reconsider is raised for this Court's review, it employs "the same standard of review used by the lower court in deciding the motion for reconsideration." *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012). Thus, when a motion to

---

[6] In support of this assertion, Petrus discusses *Tomita v. Johnson*, 49 Idaho 643, 290 P. 395 (1930), but that case does not help Petrus. *Tomita* concerned a plaintiff who, with full knowledge of the defect, purchased spoiled seed potatoes from the defendant. 49 Idaho at 647, 290 P. at 396. *Tomita* applied the "law of warranty" and affirmed judgment for the defendant. *Id.* In doing so, *Tomita* acknowledged that a breach of the warranty at issue—that "the seed is suitable for the purposes intended"—would normally accrue "at the time it is ascertained by the purchaser that the seed is not as represented." *Id.* But the *Tomita* plaintiff's knowledge of the defect barred his recovery. *Id.* In any event, *Tomita* did not concern (1) the implied warranty of habitability; (2) Idaho Code section 5-241; or (3) the distinction between tort and contract.

reconsider follows the grant of summary judgment, "this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment." *Id.*

Petrus has not shown it presented any new argument or evidence on reconsideration. In fact, the district court declined to hold a hearing on Petrus's motion for reconsideration since Petrus merely asked the district court to revisit its ruling, but did not provide any new argument or evidence causing the district court "to doubt the correctness of its ruling." Accordingly, Petrus's motion for reconsideration was properly denied. *See, e.g.*, *Spur Prods. Corp. v. Stoel Rives LLP*, 143 Idaho 812, 817, 153 P.3d 1158, 1163 (2007); *Jordan v. Beeks*, 135 Idaho 586, 592, 21 P.3d 908, 914 (2001) ("[W]e conclude that the district court was provided with no new facts to create an issue for trial, and thus there was no basis upon which to reconsider its summary judgment order.").

**C.     The district court's apportionment of attorney fees to Kirk was a proper exercise of discretion.**

On cross-appeal, Kirk challenges the amount of attorney fees awarded to him. "The awarding of attorney fees and costs is within the discretion of the trial court and subject to review for an abuse of discretion." *Kosmann v. Gilbride*, 161 Idaho 363, 366, 386 P.3d 504, 507 (2016) (quoting *Smith v. Mitton*, 140 Idaho 893, 897, 104 P.3d 367, 371 (2004)). To determine whether the district court abused its discretion, this Court examines whether the district court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion and consistently with relevant legal standards; and (3) reached its decision by an exercise of reason. *Swallow v. Emergency Med. of Idaho, P.A.*, 138 Idaho 589, 592, 67 P.3d 68, 71 (2003).

After summary judgment was entered in his favor, Kirk submitted a timely request for costs and attorney fees. The latter are at issue. Kirk requested $144,893.72 in attorney fees under Idaho Code sections 12-120(3), and -121. The district court concluded section 12-120(3) was not applicable, and that ruling is not challenged here.

However, the district court found section 12-121 was applicable. Section 12-121 permits an award of attorney fees to a prevailing party in a civil case who is required to defend against claims that were brought or pursued frivolously, unreasonably, or without foundation. Under section 12-121, the district court analyzed Petrus's claims against Kirk that had been asserted during the litigation and concluded only Petrus's conspiracy-to-defraud claim was brought or pursued frivolously, unreasonably, or without foundation. As a result, the district court

15

"apportion[ed] Kirk's attorney fees between Petrus's frivolous conspiracy-to-defraud claim and his other claims and ma[d]e an award only with respect to the former." The district court ultimately fashioned a $10,000 award.

Kirk attacks the award and emphasizes how it "amounted to less than seven percent of the total fees incurred." Kirk erroneously emphasizes how the amount of fees awarded was less than the fees Kirk actually incurred. "Idaho law simply does not equate reasonable attorney fees to actual attorney fees." *Inclusion, Inc. v. Idaho Dep't of Health & Welfare*, 161 Idaho 239, 241, 385 P.3d 1, 3 (2016).

Further, the award signifies a proper exercise of discretion. The district court recognized that an award of fees was within its discretion. The district court acted within the boundaries of its discretion and consistently with relevant legal standards, as it accurately recited and applied the governing law. Finally, the district court reached its decision by an exercise of reason. After conducting a hearing on fees, the district court took the matter under advisement and issued a written order detailing its reasoning. Under section 12-121, the district court took up Petrus's claims one-by-one, starting with the "short-lived claim for negligent construction, included in the original complaint but excluded from the first amended complaint." The district court declined to award fees in relation to that claim, reasoning that, while Kirk was aware he had been sued and retained counsel, he was never served with process and made no appearance until the first amended complaint was filed and served. In regards to Petrus's conspiracy-to-defraud claim, the district court reasoned that:

> Petrus acceded to the entry of summary judgment against that claim. Petrus has given the Court no reason to believe it was founded on much of anything but conjecture. The idea behind it—that a homebuilder and a homebuyer agreed to skirt building codes to keep costs down, so that the homebuyer could years later sell the "lemon" of a home to an unsuspecting secondary purchaser—borders on preposterous.

The district court therefore found section 12-121 fees proper for the conspiracy-to-defraud claim. Finally, the district court addressed Petrus's claim for breach of the implied warranty of habitability. But the district court found fees improper for this claim, reasoning that "it is fair to say Petrus presented an issue of first impression as to whether contract or tort accrual rules and limitations periods apply to a secondary purchaser's claim for breach of the implied warranty of habitability." As a result, the district court "apportion[ed] Kirk's attorney fees between Petrus's

frivolous conspiracy-to-defraud claim and his other claims and ma[d]e an award only with respect to the former."

While the district court acknowledged that "a precise apportionment isn't possible[,]" it arrived at an award of $10,000 after "carefully reviewing Kirk's itemization of his attorney fees, after reviewing the other pertinent portions of the record, and after considering the factors set forth in I.R.C.P. 54(e)(3)." The district court explained that the award was "reasonable in its judgment" because:

> The Court perceives almost all of the work that was necessary to defend against the conspiracy-to-defraud claim to also have been necessary to defend against the implied-warranty claim. Some independent analysis and briefing was necessary with respect to the conspiracy-to-defraud claim, to be sure, and undoubtedly some written discovery requests and some deposition questions focused on conspiracy-to-defraud issues. But most of the work pertained to both claims indivisibly or to the implied-warranty claim in particular. In an exercise of its discretion, the Court apportions $10,000.00 of Kirk's attorney fees to the frivolous conspiracy-to-defraud claim. Kirk is awarded attorney fees in that amount.
>
> The Court considers this apportionment justified for an additional reason. Petrus's implied-warranty-claim—the non-frivolous claim—failed based on a statute-of-limitations defense that could've been raised much earlier in the course of litigation and obviated the need to litigate that claim any further. Show-stopping defenses that don't require much discovery, like the successful statute-of-limitations defense here, should be tested early, before substantially all of the attorney fees necessary to get the case trial-ready have been incurred. The Court finds it inequitable to make a six-figures award of attorney fees when an early statute-of-limitations challenge to Petrus's plainly stronger claim might have nipped the litigation in the bud by leaving Petrus with only a pie-in-the-sky conspiracy-to-defraud claim.

This analysis signifies a proper exercise of discretion. Although the district court could have declared the conspiracy-to-defraud claim as the only frivolous claim and allowed the submission of a supplemental memorandum of fees and costs so as to allow Kirk to tailor its request to that specific claim before apportioning fees, the district court's analysis in this case was nevertheless proper. Indeed, Kirk does not contend the district court erred factually by making the above findings. Rather, despite the district court's well-reasoned, articulate analysis, Kirk contends "the district court chose to punish Kirk by awarding him less than seven percent of his fees for defending against one frivolous claim and one claim involving issues of first impression." The district court's analysis rebuts Kirk's contention, showing that the award was not to punish Kirk, but rather was to fairly compensate him for defending against the only frivolous claim. Kirk, the party awarded fees, is in error to contend he was punished by the

award. Section 12-121, under which fees were awarded, is clear that an award of fees is not a matter of entitlement, but a matter left to the court's discretion. And based on the district court's analysis explored above, the district court appropriately exercised that discretion. Therefore, the district court's apportionment of attorney fees is affirmed.

**D.      We decline to award attorney fees on appeal.**

Petrus does not request attorney fees on appeal. Kirk requests attorney fees on appeal, relying on the basis of Idaho Code section 12-121. Attorney fees under section 12-121 may be awarded to the prevailing party on appeal only "if the action was pursued, defended, or brought frivolously, unreasonably, or without foundation." *Idaho Military Historical Soc'y, Inc. v. Maslen*, 156 Idaho 624, 633, 329 P.3d 1072, 1081 (2014) (internal quotation marks omitted). "Such circumstances exist when an appellant has only asked the appellate court to second-guess the trial court by reweighing the evidence or has failed to show that the district court incorrectly applied well-established law." *Snider v. Arnold*, 153 Idaho 641, 645–46, 289 P.3d 43, 47–48 (2012).

As reasoned above, Kirk is the prevailing party on appeal, but only in part. Kirk prevails on Petrus's appeal, but not on Kirk's cross-appeal. Fees on appeal to Kirk are improper since he prevails only in part. *Tapadeera, LLC v. Knowlton*, 153 Idaho 182, 189, 280 P.3d 685, 692 (2012). Further, Petrus in good faith raised issues of first impression, making fees improper for an additional reason. *E.g.*, *Westover v. Cundick*, 161 Idaho 933, 937, 393 P.3d 593, 597 (2017).

## IV. CONCLUSION

For the above reasons, we affirm both the summary judgment entered in favor of Kirk and apportionment of attorney fees. We award neither attorney fees nor costs, as each party has prevailed in part on appeal.

Justices BRODY and BEVAN, and Justices Pro Tem GRATTON and BUTLER **CONCUR**.